**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| **Crave Brands LLC, and** | Bankruptcy Nos. 21-04729 & 21-04731 |
| **Meathead Restaurants, LLC,** | Honorable Timothy A. Barnes |
| Debtors. | |

## NOTICE OF MOTION

**Please take notice** that on **Monday, April 19, 2021, at 1:00 P.M.,** or as soon thereafter as counsel may be heard, the undersigned attorneys shall appear before the Honorable Judge Timothy A. Barnes, or any judge sitting in that judge's place, and present the Debtor's motion to dismiss the case, a copy of which is attached.

**This motion will be presented and heard electronically using Zoom for Government.** No personal appearance is necessary or permitted. To appear and be heard on the motion, you must do the following:

**To appear by video**, use this link: https://www.zoomgov.com/. Then enter the meeting ID and password.

**To appear by telephone**, call Zoom for Government at 1-669-254-5252 or 1-646-828-7666. Then enter the meeting ID and password.

**Meeting ID and password.** The meeting ID for this hearing is 161 329 5276 and the password is 433658. The meeting ID and password can also be found on the judge's page on the court's web site.

**If you object to this motion** and want it called on the presentment date above, you must file a Notice of Objection no later than two (2) business days before that date. If a Notice of Objection is timely filed, the motion will be called on the presentment date. If no Notice of Objection is timely filed, the court may grant the motion in advance without a hearing.

{00194059}

                LQD Financial Corp.

                By: /s/ William J. Factor
                One of Its Attorneys

William J. Factor (6205675)
**FACTORLAW**
105 W. Madison Street, Suite 1500
Chicago, IL 60602
Tel: (847) 239-7248
Fax: (847) 574-8233
Email: wfactor@wfactorlaw.com

# CERTIFICATE OF SERVICE

I, William J. Factor, an attorney, hereby certify that on April 12, 2021, pursuant to Section II.B.4 of the Administrative Procedures for the Case Management/Electronic Case Filing System and Fed.R.Civ.P. 5(a), I caused a copy of the foregoing *Notice of Motion* and the accompanying *Motion* to be served electronically through the Court's Electronic Notice for Registrants on all persons identified as Registrants on the Service List below.

/s/ *William J. Factor*

# SERVICE LIST

- **Matthew Brash**   mbrash@newpointadvisors.us, I003@ecfcbis.com
- **Patrick S Layng**   USTPRegion11.ES.ECF@usdoj.gov
- **Lauren Newman**   lnewman@thompsoncoburn.com, chicagodocketing@thompsoncoburn.com;aversis@thompsoncoburn.com;ebarraza@thompsoncoburn.com
- **David A Warfield**   dwarfield@thompsoncoburn.com

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>**Crave Brands LLC,**<br><br>**Meathead Restaurants LLC,**<br><br>Debtors. | Chapter 11<br><br>Bankruptcy Nos. 21-04729 & 21-04731<br><br>Honorable Timothy A. Barnes |

### LQD'S MOTION TO DISMISS UNDER §§ 305 AND 1112(B) AND/OR FOR STAY RELIEF

Crave Brands, LLC, ("Crave"), operates 12 quick-serve Meatheads restaurants in Illinois. Meatheads Restaurants LLC ("Meatheads" and, along with Crave, the "Debtors") is wholly owned by Crave. The bankruptcy cases for the Debtors should be summarily dismissed because (a) the cases were not authorized by the manager of Crave but instead were a stunt Crave's former manager pulled to stay in charge; (b) the cases serve no legitimate bankruptcy purpose and were filed in bad faith; (c) the interests of creditors and the Debtors are best served by dismissal;[1] and (d) the Debtors do not qualify for relief under Subchapter 5.

Alternatively, the stay should be lifted because (a) the Debtors executed a forbearance agreement waiving the application of the stay in situations precisely like the present; (b) LQD Financial Corp. ("LQD") is not adequately protected because the value of its collateral is declining through the Debtors' mismanagement; and (c) the Debtors' balance sheet indicates they do not appear to have much, if any, equity in their property and LQD believes they cannot

---

[1] As explained below, at least 9 of the so-called *Takena* bad faith factors are present in this case. *In re Tekena USA, LLC*, 419 B.R. 341, 346 (Bankr. N.D. Ill. 2009).

{00194059}                                  1

confirm a plan.[2]

As to authority, prior to the filing, LQD foreclosed its pledge of the equity interests of KW Restaurant Holdings LLC (Crave's majority member) and replaced Crave's former manager, Steve Karfaridis, with Robert Handler. At the time of the filing, Karfaridis was not Crave's manager, nor did Karfaridis have the right to vote the limited liability company interests of Crave. And irrespective of the foreclosure, the pledge agreements for KW and Crave prohibited Karfaridis from exercising voting rights upon a default, which renders invalid Karfaridis' execution of the written consent authorizing the filing.[3]

Karfaridis and his counsel received notice of the foregoing before pulling the bankruptcy trigger, but opted to file knowing that the person signing the petitions under oath lacked authority and thus made a false oath. At the time of the filing, Robert Handler was, and is still, the manager for KW Restaurants and Crave Brands, and he did not authorize the filing of the Crave Brands case or the Meathead Restaurant case. As such, the chapter 11 cases of Crave Brands and Meatheads Restaurants should be dismissed because they were filed *ultra vires.*

Dismissal also is warranted under §§ 305 and 1112(b). At least 9 of the 14 *Tekena* factors support that outcome and with respect to § 305, dismissal best serves all creditors and the Debtors. Karfaridis has a history, discussed below, of mismanaging the Debtors and failing to

---

[2] *See* Amended and Restated Forbearance and Reaffirmation Agreement (the "Forbearance Agreement"), a copy of which is attached as Exhibit 1.

[3] *See* Correspondence dated April 6, 2021 attached as Exhibit 2. *See also* Amended Pledge Agreement (Crave) at § 6.1 (attached as Exhibit 3, *infra.* and providing that "After a Default hereunder or the Loan Documents and automatically without notice to Pledgor any other person, Pledgor shall cease to have voting or other rights with respect to the Collateral, including the Interests, and, as further set forth in § 6.13, Secured Party shall thereafter have exclusive rights to vote all or any part of the Interests and to execute consents in respect thereto, to consent to, satisfy or waive notice of any or all meetings, to elect members and to exercise any and all other rights as a member of Company whether under the Company's Operating Agreement or by operation of law.).

{00194059}                                    2

timely pay creditors. LQD presently is owed $6,550,000 and holds valid and enforceable liens and security interests upon all the Debtors' assets. Unsecured debt is minimal.[4] If the cases are dismissed or the stay is lifted, LQD intends to sell the Debtors' assets to a well-known and reputable new operator with the know-how and competence to manage the restaurants and ensure payment to creditors. Alternatively, if these cases stay in chapter 11, Karfaridis will continue to dissipate value resulting in detriment to creditors and Karfaridis himself.

In fact, Karfaridis is primarily liable for the $6,550,000 owed to LQD, so even if he can extract value in the end, that value ultimately will redound to the benefit of LQD. This highlights the fact that these cases serve no purpose for Karfaridis and filing them was foolish. Karfaridis was offered the opportunity to relieve himself of his substantial personal liability to LQD, while preserving a future interest in the restaurants. Instead, his counsel advised him to file these bankruptcy cases.

Dismissal under § 1112(b) also is warranted because these cases were filed in bad faith. Bad faith is evident from the two-party nature of the disputes, from the timing of the filings just after a foreclosure sale, from the misuse of company funds by Karfaridis and Michael Webb, the the putative CFO, from Karfaridis' and Webb's lack of competence, from the absence of any meaningful unsecured debt, and the improper designation of this case as a small business proceeding.[5]

In early 2019, LQD advanced $6,650,000 to the Debtors in large part to enable Karfaridis

---

[4] According to the Debtor's balance sheet, its trade payables are $308,533. On information and belief, those payables are current and represent ongoing and recurring charges for food and related items.

[5] The Debtors' balance sheet shows non-contingent and liquidated debts of $8,435,047 and assets of approximately $6,733,490. The debt total is above the $7.5 million cap. Although part of the debt consists of amounts owed under the Payroll Protection Program, those amounts still represent outstanding obligations until forgiven. *But cf In re Parking Management, Inc.*, 620 B.R. 544 (Bankr. D. Md. 2020).

{00194059}                                                3

Case 21-04729    Doc 22    Filed 04/13/21    Entered 04/13/21 10:38:58    Desc Main
Document      Page 7 of 19

and Webb to acquire Crave Brands and Meatheads. Karfaridis and Webb put none of their own funds into the acquisition and, in fact, have been misusing funds for their personal benefit, including for personal travel and non-Debtor business expenses. Even before the pandemic, Karfaridis' inability to manage the Debtors was palpable as the business was incurring losses, was unable to timely pay creditors, and had incurred a state tax lien of several hundred thousand dollars. Because of pre-pandemic losses and mismanagement, the Debtors retained consultants over the last year to help perform essential management functions that Karfaridis and Webb were unable to execute. On information and belief, those consultants are no longer working for the Debtors and thus Karfaridis and Webb are left with undertakings they are singularly unfit to perform.

In addition to summary dismissal of these cases, summary relief from the stay is warranted because the Debtors executed a forbearance agreement in December of 2020, that specifically and expressly estops them from contesting stay relief and admits such relief is appropriate. To the extent stay waivers have been found unenforceable, it is when they unfairly impinge the rights of unsecured creditors. In this case, stay relief will not harm unsecured creditors, but rather benefits unsecured creditors. It will ensure prompt payment.

Stay relief also is justified because LQD is not adequately protected and because the Debtors may lack equity in their property and LQD believes such property is not necessary for an effective reorganization.

## BACKGROUND

On April 9, 2021, Crave Brands LLC filed a bankruptcy petition under Chapter 11 of Title 11, United States Code (the "Bankruptcy Code"). Crave owns and operates 12 Meatheads restaurants in Illinois. Shortly after Crave Brands filed for bankruptcy relief, Meathead Restaurants LLC, ("Meatheads"), filed for relief. KW Restaurant Holdings, LLC, ("KW"), is

{00194059}                                    4

Crave's controlling equity holder. Karfaridis owns 100% of KW and was its manager. The Crave and Meatheads cases are related, and it is assumed that the Meatheads case will be administratively consolidated with the Crave Brands case before this Court.

On or about February 22, 2019, LQD provided Crave Brands, LLC, KW Restaurant Holdings, LLC, Meathead Franchising, LLC, Meathead Restaurants, LLC And Steve Karfaridis, (together the "Borrowers"), with an initial business loan in the principal amount of $6,500,000, which was then increased to $6,650,000, (the "Business Loan"), for the acquisition of the Meatheads Restaurants. The Business Loan is secured by perfected liens and security interests upon the Borrowers' property, including the membership interests of Steve Karfaridis in KW Restaurant Holdings ("KW") and the membership interests of KW in Crave Brands.

The Business Loan is evidenced by that certain LQD Business Finance Loan Agreement dated February 22, 2019, as amended by that certain LQD Business Finance Loan Amendment dated September 27, 2019, as amended by that certain LQD Business Finance Loan Amendment dated March 25, 2020 and as further amended by that certain LQD Business Finance Loan Agreement dated July 2, 2020. The original maturity date for the Business Loans was April 28, 2020. That date was extended to December 28, 2020.

On June 29, 2020, LQD and the Borrowers entered into an initial forbearance agreement. On December 30, 2020, LQD and the Borrowers entered into the amended Forbearance Agreement. The forbearance period under the Forbearance Agreement expired on March 31, 2021. LQD was in discussions with the Borrowers to negotiate a resolution of the Borrowers' defaults, but the Borrowers' cut those discussions short by improperly filing emergency petitions for relief under chapter 11.

I. **The filings of the chapter 11 petitions are *ultra vires* acts, and the petitions should be dismissed under 11 U.S.C. § 1112.**

"The authority to file a bankruptcy petition on behalf of a corporation must derive from

{00194059}                                              5

state corporate governance law." *In re NNN 123 N. Wacker, LLC*, 510 B.R. 854, 858 (Bankr. N.D. Ill. 2014) (quoting *In re Gen–Air Plumbing & Remodeling, Inc.*, 208 B.R. 426, 430 (Bankr.N.D.Ill.1997); *See also Price v. Gurney*, 324 U.S. 100, 106, 65 S.Ct. 513, 89 L.Ed. 776 (1945). "In addition to 'cause' under § 1112(b), lack of corporate authority to file is an independent ground for dismissal of a bankruptcy case filed by a corporation." *Id.* (citing *Price*, 324 U.S. at 106). The same is true for an LLC. *Id. See also In re Lake Michigan Beach Pottawattamie LLC,* 547 B.R. 899, 910 (Bankr. N.D. Ill. 2016) ("The Debtor is a limited liability company created in Michigan, therefore, the court must apply Michigan corporate governance law in determining whether the filing was a valid corporate action").

Crave Brands and Meathead Restaurants are Delaware limited liability companies. Crave's initial manager was Steve Karfaridis, and its members were KW Restaurant Holdings LLC ("KW"), and several other entities. Crave's 2019 tax return indicate KW owns approximately 72% of Crave. KW also is a Delaware limited liability company. Karfaridis owned one-hundred percent (100%) of KW and was its manager.

In December of 2020, Crave, KW, Meathead Restaurants, Meatheads Franchising and Karfaridis executed various documents in favor of LQD. The documents included the Forbearance Agreement, as well as pledge agreements whereby Karfaridis pledged his limited liability company interest in KW to LQD and KW pledged its limited liability company interest in Crave to LQD. Copies of the pledge agreements are appended as Exhibit 3.

The Forbearance Period automatically terminated on March 31, 2021. As a result, LQD exercised certain of its rights under the Forbearance Agreement and the pledge agreements. Among other things, the pledge agreement provided that upon an Event of Default and without notice, Karfaridis and KW Restaurants lost the right to exercise voting control over the limited liability company interests held in KW and Crave, respectively.

Also, in connection with the termination of the forbearance period, LQD foreclosed upon the pledge of KW's limited liability company interests through partial retention of collateral under § 9-620 of the Uniform Commercial Code.[6] Section 9-620 allows a secured creditor to partially retain collateral upon a default so long as the Debtor consents. In this case, Section 5(d) of the Forbearance Agreement provides that:

> Borrowers acknowledge that as a consequence of the Existing Defaults and the terms of the Loan Documents and this Agreement, Lender is entitled to enforce its remedies with regard to the Collateral under Article 9 of the UCC or otherwise without notice to any of the Borrowers, such notice having been waived and relinquished. Borrowers consent to Lender's acceptance of the Collateral in full or partial satisfaction of the Indebtedness, as determined by Lender pursuant to a writing Lender delivers to Borrowers, with the amount of the Indebtedness satisfied to be determined by Lender at the time of acceptance.[7]

As the owner of the limited liability company interests of KW, LQD Financial Corp. executed a written consent removing Karfaridis as the manager of KW and appointing Robert Handler as the manager of KW.[8] Robert Handler, as the manager of KW, then executed a consent removing Karfaridis as the manager of Crave and appointing himself as the manager of Crave.[9]

Although not required to do so, LQD advised Thompson Coburn, LLC, counsel to Karfaridis, and Karfaridis personally, that Karfaridis had been removed as the manager of Crave and that Robert Handler was the manager of Crave. That notice further advised that Karfaridis

---

[6] Exhibit 4 represents the LLC Interest for KW that was assigned to LQD Financial Corp. in partial satisfaction of the indebtedness.
[7] The Pledge Agreement provides that LQD can retain the collateral in partial satisfaction of the debt in an amount to be determined by LQD.
[8] See Exhibit 5.
[9] See Exhibit 6.

{00194059}                                7

did not have authority to manage Crave.[10]

Even though they knew Karfaridis was no longer the manager of Crave, Thompson Coburn filed the bankruptcy petitions without authorization. Mr. Handler did not authorize the bankruptcy.[11] The cases were filed *ultra vires* and thus dismissal is required. *In re Gen-Air Plumbing & Remodeling, Inc.*, 208 B.R. 426, 430 (Bankr. N.D. Ill. 1997) (dismissing chapter 11 case under § 1112 and reasoning that "[t]he case at bar involves one of the non-enumerated grounds: alleged lack of proper corporate authority or an ultra vires act by a corporate agent.").

II. **The cases were filed in bad faith because this is a two-party dispute, the Debtors may have little equity in their property, there are few debts to unsecured creditors, and creditors are better served by dismissal.**

   A. **Section 1112(b) authorizes a court to dismiss a case filed in bad faith and at least 9 of the bad faith factors exist in this case.**

Section 1112(b) provides that a bankruptcy court may dismiss a case for various reasons, one of which is that it was filed in bad faith. The factors courts consider when evaluating whether to dismiss a case as a bad faith filing include:

> 1. The debtor has few or no unsecured creditors;
> 2. There has been a previous bankruptcy petition by the debtor or a related entity.
> 3. The pre-petition conduct of the debtor has been improper.
> 4. The petition effectively allows the debtor to evade court orders.
> 5. There are few debts to non-moving creditors.
> 6. The petition was filed on the eve of foreclosure.
> 7. The foreclosed property is the sole or major asset of the debtor.
> 8. The debtor has no on-going business or employees.
> 9. There is no possibility of reorganization.
> 10. The debtor's income is not sufficient to operate.
> 11. There was no pressure from non-moving creditors.
> 12. Reorganization essentially involves the resolution of a two-party dispute.
> 13. A corporate debtor was formed and received title to its major assets immediately before the petition.

---

[10] *See* Exhibit 7.
[11] *See* Exhibit 8.

{00194059}    8

14. The debtor filed solely to create the automatic stay."

*See In re Lake Michigan Beach Pottawattamie Resort LLC*, 547 B.R. 899, 905–06 (Bankr. N.D. Ill. 2016) (citing *In re Tekena USA, LLC*, 419 B.R. 341, 346 (Bankr. N.D. Ill. 2009)). As explained below, at least 9 of the so-called *Tekena* factors exist in this case.

>  (i)   This is a two-party dispute with few creditors other than LQD and there was no pressure from non-moving creditors.

This case is the essence of a two-party dispute that implicates LQD alone (factors 1, 5, 11 and 12). Debtors' financial statements show they owe $6,650,000 to LQD, and have current liabilities of approximately $593,862, of which $308,533 is owed to vendors. The actual amount owed to vendors could be much lower. Debtors did not have any disputes or financial issues with their trade or other creditors, and they were paying or honoring those obligations on a regular basis immediately prior to filing, although prior to the involvement of consultants the Debtors were having difficulty paying creditors, including taxing bodies. As discussed elsewhere, creditors will fare much better if these cases are dismissed. The restaurants then will be owned and managed by professionals having a track record of ensuring timely payment to creditors in full in a much shorter period than the Debtors offer. This is the essence of a two-party dispute. *See generally In re Loc. Union 722 Intern. Broth. of Teamsters*, 414 B.R. 443, 449 (Bankr. N.D. Ill. 2009) ("[w]hile not dispositive, the number of creditors and the amount of claims they hold is a relevant consideration in determining whether the bankruptcy is really a two-party dispute.").

>  (ii)  The petition was filed in the shadow of a foreclosure action.

The bankruptcy petitions were filed approximately 30 minutes *after* LQD foreclosed the limited liability company interests of KW and replaced Karfaridis as the manager of KW and Crave (factor 6). The timing of the filing was thus coordinated to frustrate LQD's exercise of its

rights. If the Debtors challenge the timing of the foreclosure the fact remains that the filing was at least on the eve of a foreclosure sale and in bad faith.

> (iii) The Debtors lack the acumen and knowledge to manage the business, the pre-petition conduct of the debtor has been improper, and the Debtors were losing money.

The Debtors' bad faith also is manifest from the fact that Karfaridis and Webb lack the acumen and experience to operate the Meathead restaurants and they have demonstrated dishonesty and untruthfulness in their stewardship of the Debtors (factors 3, 8, 9 and 10). Prior to the Pandemic, the Debtors were not generating sufficient revenue to operate their business, were failing to timely pay trade creditors, and had incurred a significant tax liability. PPP funds have masked their incompetence, as has the assistance of a restaurant consultant. The Debtors will not be able to operate profitably and will suffer substantial losses when these crutches are gone.

Furthermore, Karfaridis and Webb had been using the Debtors' assets as their own personal piggy bank. Webb, who allegedly serves as CFO for the Debtors, took a $75,000 fee at the closing of the transaction with LQD. Webb also improperly directed substantial funds to an entity that he owns called Woodside Advisors for reasons that are not clear and for which no explanation has been given. Woodside Advisors shares office space with the Debtors, and, on information and belief, the Debtors paid the full rent for the space at a rate that was above market.

Similarly, Karfaridis made repeated material misrepresentations to LQD. Karfaridis represented that he would move to Chicago to run the business – a material representation upon which LQD relied in making the Business Loan. However, after the transaction closed, Karfaridis did not move to Chicago to run the restaurants full-time, but rather travelled back and forth from California to Chicago at the expense of the Debtors.

{00194059}                                                10

   (iv) Karfaridis filed these cases solely to invoke the stay and improperly delay LQD's exercise of its rights.

Bad faith also is evident from the fact that Karfaridis is a direct borrower under the LQD loan documents and is liable for the full amount owed to LQD. This bankruptcy case thus serves no legitimate purpose. Even if the Debtors could be reorganized for the benefit of Karfaridis (which they cannot because Karfaridis does not own KW any longer), LQD would be entitled to that value because of its full recourse claim against Karfaridis. Thus, these bankruptcy cases merely hinder and delay LQD's ultimate exercise of its rights and they serve no legitimate purpose.

  **B.** **Dismissal is warranted based upon the existence of 9 of the Tekena factors.**

At least 9 of the *Tekena* factors support a finding that this case was filed in bad faith. That circumstance, when coupled with the Debtors' lack of authorization to file and the fact that all creditors will be best served if the case is dismissed counsel in favor of dismissal.

**III.** **The interests of creditors and the Debtor will be best served by dismissal under §305.**

Section 305(a)(1) of the Bankruptcy Code permits the court to dismiss a case or suspend all proceedings if "the interests of creditors and the debtor would be better served by such dismissal or suspension." 11 U.S.C. § 305(a)(1). "Whether to dismiss or suspend under section 305(a)(1) is consequently a discretionary decision to be made on a case-by-case basis." *In re Intl. Zinc Coatings & Chem. Corp.*, 355 B.R. 76, 82 (Bankr. N.D. Ill. 2006) (citing In re Fortran Printing, Inc., 297 B.R. 89, 94 (Bankr. N.D. Ohio 2003) and *In re 801 S. Wells St. L.P.*, 192 B.R. 718, 723 (Bankr.N.D.Ill.1996)). Dismissal under § 305 is a drastic remedy. *Id.* "The key issue in determining the propriety of a § 305 dismissal is whether it will serve the best interests of both the Debtor and the creditors." *In re O'Neil Village Personal Care Corp.*, 88 B.R. 76, 79 (Bankr. W.D. Pa. 1988).

{00194059}      11

Dismissal under §305 benefits all the Debtors' creditors because then payment will be forthcoming much quicker and with greater certainty. LQD expects the Debtors' assets will be sold and fully expects that the transaction will result in the assumption of all debts owed to creditors and the payment of such debts in the ordinary course of business, instead of at some time in the future at a reduced amount, as normally happens in chapter 11.

Dismissal also is in the best interests of the Debtors. Assuming, for the sake of argument, that Karfaridis has an ownership interest in the Debtors, he still owes LQD more than $6.5 million and will benefit from dismissal. Karfaridis and Webb also are not capable or managing the Debtors and this important task should not be entrusted to them.

IV. **The stay should be lifted for cause because the Debtors consented to stay relief and are estopped from challenging this motion for relief from the stay and because of the Debtors' bad faith.**

Section 362(d) authorizes a bankruptcy court to grant relief from the stay "for cause." Stay relief also is warranted if a creditor lacks adequate protection or the debtor lacks equity in property and the property is not needed for an effective reorganization. 11 U.S.C. § 362(d).

Stay relief is appropriate here for many reasons.

A. **The Debtors are estopped from denying that stay relief is appropriate.**

As an initial matter, stay relief is appropriate because the Forbearance Agreement contains a pre-petition stay waiver. "A prepetition [stay] waiver is an agreement entered into by a debtor prior to bankruptcy pursuant to which the debtor agrees to waive the protection of the automatic stay with respect to a secured creditor or agrees not to oppose any attempt by such creditor to obtain stay relief in the event of the debtor's bankruptcy. Although stay waivers were long thought to be unenforceable as against public policy, an increasing number of courts are now enforcing them." *In re Triple A & R Capital Inv., Inc.*, 519 B.R. 581, 583–84 (Bankr. D.P.R. 2014), aff'd sub nom. *In re Triple A&R Capital Inv. Inc.*, BR 14-4744 BKT11, 2015 WL

{00194059}                                         12

1133190 (D.P.R. Mar. 12, 2015). *See also .In re Alexander SRP Apartments, LLC*, 12-20272, 2012 WL 1910088, at *6 (Bankr. S.D. Ga. Apr. 20, 2012) ("Certainly the weight of case law upholds enforcement of waivers of the automatic stay under appropriate circumstances."). "A review of the cases nationwide that addressed this issue indicate a trend that appears toward the enforcement of stay waivers." *Id.*[12] "[T]he party opposing enforcement of the waiver has the burden of proving that the waiver should not be enforced." *Id.* (citing *In re Frye*, 320 B.R. 786, 791 (Bankr.D.Vt.2005); *In re B.O.S.S. Partners I*, 37 B.R. 348, 351 (Bankr.M.D.Fla.1984)).

Stay waivers also are more likely to be enforced when, as here, the provision was executed in the context of a pre-petition forbearance agreement and when, like here, the debtor has few, if any, creditors other than the lender seeking to exercise the right. This is even more true when creditors will receive payment in full and much quicker outside of the bankruptcy. Pre-petition stay waivers also are more likely to be enforced when sophisticated counsel represented the debtor.

The Forbearance Agreement the Debtors executed in December of 2020, contains a stay waiver and there is no reason not to enforce it. Section 7(b) of the Forbearance Agreement provides as follows:

> In the event of the filing of any petition for bankruptcy relief filed by or against any of the Borrowers (a "Bankruptcy Filing"), such Borrower consents to the entry of an order granting Lender relief from the automatic stay of Section 362 of the Bankruptcy Code and shall not assert or request any other party to assert that the automatic stay provided by Section 362 of the Bankruptcy Code shall operate

---

[12] *See In re Bryan Road, LLC,* 382 B.R. 844, 849 (Bankr.S.D.Fla.2008) (setting forth factors for a bankruptcy court to consider in deciding whether to enforce a stay relief agreement); *In re Frye,* 320 B.R. 786 (Bankr.D.Vt.2005) (although such an agreement is not *per se* enforceable, the creditor in that case could obtain enforcement unless the debtor, after an evidentiary hearing, could show sufficient equity in the property, sufficient likelihood of effective reorganization, or sufficient prejudice to other creditors); *In re Excelsior Henderson Motorcycle Mfg. Co.,* 273 B.R. 920 (Bankr.S.D.Fla.2002) (enforcing a prepetition agreement); *In re Powers,* 170 B.R. 480 (Bankr.D.Mass.1994) (same).

{00194059} 13

> or be interpreted to stay, interdict, condition, reduce, or inhibit the ability of Lender to enforce any rights it has under the Loan Documents or any other rights Lender has against any Borrower or against any property owned by any Borrower. Without limiting the generality of the foregoing, each Borrower acknowledges and agrees, and is estopped from contesting, that cause for relief from the automatic stay shall exist if any of the Borrowers are subject to a Bankruptcy Filing.

The Debtors' waiver of the stay was executed in the context of a negotiated forbearance agreement in which the Debtors were represented by experienced and sophisticated counsel at Thompson Coburn (the same firm that filed the cases).

> **Advice of Counsel**. The wording of this Agreement was reviewed by legal counsel for each of the Parties and each of them had sufficient opportunity to propose and negotiate changes prior to its execution and enters into this Agreement freely and of their own volition and without any duress or coercion. The wording of this Agreement shall not be construed in favor of or against any Party. Forbearance Agreement at §8(c).

Although sometimes courts reject stay waivers, the concerns rendering them unenforceable are not present here. If the stay is lifted, LQD intends to find a buyer for the Debtors' assets who LQD anticipates will operate the Meatheads restaurants and pay creditors in the ordinary course of business. Lifting the stay will thus benefit all creditors.

Furthermore, the waiver was part of a negotiated forbearance agreement in which the Debtors had good lawyers and the waiver comports with the strong public policy favoring negotiated resolutions of disputes. "[P]erhaps the most compelling reason for enforcement of the [stay waiver in the] forbearance agreement is to further the public policy in favor of encouraging out of court restructuring and settlements." *In re Cheeks*, 167 B.R. 817, 819 (Bankr.D.S.C.1994).

### B.    Stay relief is warranted because of the Debtors' bad faith.

"A lack of good faith in filing a petition constitutes cause for relief from the stay under 11 U.S.C. § 362(d)(1)." *In re Posner*, 610 B.R. 586, 591 (Bankr. N.D. Ill. 2019). The

{00194059}                                    14

good faith standard should be assessed objectively rather than subjectively. *Id.* (citing *In re Royalty Prop.*, 604 B.R. 742, 750 (Bankr. N.D. Ill. 2019) (citing *In re Schlangen,* 91 B.R. 834, 837 (Bankr. N.D. Ill. 1988)).

LQD explained previously the factors establishing the Debtors' bad faith. In brief, these cases are two-party disputes between the Debtors and LQD, the Debtors have few unsecured creditors and creditors are likely to be paid in full if the stay is lifted, the cases were filed just after a foreclosure sale involving the ownership interests of the Debtors' majority member and the replacement of the managers for Crave and its majority member, and the Debtors' principals have acted wrongfully and are not capable of managing the Debtor. These facts establish ample cause for an objective finding of bad faith sufficient to lift the stay.

    C.    **Stay relief is warranted under §§ 362(d)(1) and (2).**

Stay relief also is warranted under §§ 362(d)(1) and (2). Their balance sheet indicates the Debtors do not believe they have much equity in their property. Furthermore, LQD believes the Debtors cannot show their property is necessary for an effective reorganization. The Debtors' principals do not know how to operate the restaurants. Through their stewardship prior to the Pandemic the Debtors were losing money. These facts allow the reasonable conclusion that the Debtors cannot confirm a feasible plan within a reasonable time. Stay relief further is warranted because the Debtors' inability to operate the restaurants at a profit means LQD's collateral is declining in value and it is not adequately protected.

V.    **Reduced Notice and Rule 4001 Waiver**

A motion to dismiss generally requires 21-days' notice. LQD has spoken with the attorneys that filed the cases and they have agreed to respond to this motion ono or before April 19, 2021. Additionally, in light of the two-party nature of these ccases, LQD submits that notice should be reduced to seven days and that such notice is sufficient under the circumstances. Fed

{00194059}    15

R. Bank. P. 9006. LQD further requests that any order lifting the stay waive the 14-day period in Rule 4001(a)(3).

WHEREFORE, for all the foregoing reasons, LQD Financial Corp. respectfully requests that the Court enter an Order dismissing the captioned chapter 11 cases or, in the alternative, lifting the automatic stay to enable LQD to enforce its rights and remedies.

LQD Financial Corp.

By: /s/ William J. Factor
One of Its Attorneys

William J. Factor (6205675)
**FACTORLAW**
105 W. Madison Street, Suite 1500
Chicago, IL 60602
Tel:    (312) 878-6146
Fax:    (847) 574-8233
Email: wfactor@wfactorlaw.com

{00194059}                                    16