**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>**Crave Brands LLC, and**<br><br>**Meathead Restaurants, LLC,**<br><br>Debtors. | Chapter 11<br><br>Bankruptcy Nos. 21-04729 & 21-04731<br><br>Honorable Timothy A. Barnes |

## NOTICE OF MOTION

**Please take notice** that on **Monday, June 28, 2021, at 2:00 P.M.,** or as soon thereafter as counsel may be heard, the undersigned attorneys shall appear before the Honorable Judge Timothy A. Barnes, or any judge sitting in that judge's place, and present the LQD Financial's Motion to Appoint Chapter 11 Trustee on Shortened and Limited Notice, a copy of which is attached.

**This motion will be presented and heard electronically using Zoom for Government.** No personal appearance is necessary or permitted. To appear and be heard on the motion, you must do the following:

**To appear by video**, use this link: https://www.zoomgov.com/. Then enter the meeting ID and password.

**To appear by telephone**, call Zoom for Government at 1-669-254-5252 or 1-646-828-7666. Then enter the meeting ID and password.

**Meeting ID and password.** The meeting ID for this hearing is 161 329 5276 and the password is 433658. The meeting ID and password can also be found on the judge's page on the court's web site.

**If you object to this motion** and want it called on the presentment date above, you must file a Notice of Objection no later than two (2) business days before that date. If a Notice of Objection is timely filed, the motion will be called on the presentment date. If no

{00200766}

Notice of Objection is timely filed, the court may grant the motion in advance without a hearing.

LQD Financial Corp.

By: /s/ William J. Factor
One of Its Attorneys

William J. Factor (6205675)
**FACTORLAW**
105 W. Madison Street, Suite 1500
Chicago, IL 60602
Tel:   (847) 239-7248
Fax:   (847) 574-8233
Email:wfactor@wfactorlaw.com

# CERTIFICATE OF SERVICE

I, William J. Factor, an attorney, hereby certify that on June 28, 2021, pursuant to Section II.B.4 of the Administrative Procedures for the Case Management/Electronic Case Filing System and Fed.R.Civ.P. 5(a), I caused a copy of the foregoing *Notice of Motion* and the accompanying *Motion* to be served electronically through the Court's Electronic Notice for Registrants on all persons identified as Registrants on the Service List below.

/s/ *William J. Factor*

# SERVICE LIST

- **Matthew Brash**   mbrash@newpointadvisors.us, I003@ecfcbis.com
- **William J Factor**   wfactor@wfactorlaw.com, wfactorlaw@gmail.com;bharlow@wfactorlaw.com;wfactor@ecf.inforuptcy.com;wfactormyecfmail@gmail.com;factorwr43923@notify.bestcase.com
- **Brian Hockett**   bhockett@thompsoncoburn.com, hspurgeon@thompsoncoburn.com
- **Gregory J Jordan**   gjordan@jz-llc.com, jordan.gregoryr99818@notify.bestcase.com
- **Patrick S Layng**   USTPRegion11.ES.ECF@usdoj.gov
- **David A. Newby**   dnewby@momkus.com, lholub@momkus.com
- **Lauren Newman**   lnewman@thompsoncoburn.com, chicagodocketing@thompsoncoburn.com;aversis@thompsoncoburn.com;ebarraza@thompsoncoburn.com
- **Jeffrey K. Paulsen**   jpaulsen@wfactorlaw.com, bharlow@wfactorlaw.com;jpaulsen@ecf.inforuptcy.com
- **David A Warfield**   dwarfield@thompsoncoburn.com
- **Mark R Zito**   mzito@jz-llc.com

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>**Crave Brands LLC, and Meathead Restaurants, LLC,**<br><br>　　　　　Debtors. | Chapter 11<br><br>Bankruptcy Nos. 21-04729 & 21-04731<br><br>Honorable Timothy A. Barnes |

### LQD FINANCIAL'S MOTION TO APPOINT
### CHAPTER 11 TRUSTEE ON SHORTENED AND LIMITED NOTICE

A trustee should be appointed in a chapter 11 case when there is cause, such as fraud or mismanagement or loss of estate value, or when the appointment is in the best interests of the creditors or the estate or there has been a loss of confidence in management. In this situation, over the last three weeks the Debtors' management has again defrauded LQD Financial Corp. ("LQD"), and this time they also have defrauded the Court, the Subchapter V Trustee and even their own counsel regarding the status and health of the Debtors' current business operations. As discussed below, this fraud is indefensible and warrants the immediate appointment of a Chapter 11 Trustee to prevent the further erosion of business operations and enterprise value. Appointing a Trustee now also is pragmatic and beneficial to all concerned. Current management's continued stewardship will destroy the Meathead's restaurant business. Given their past misdeeds and their overall disdain for the best interests of others and their inability to act as fiduciaries, the appointment of a trustee is inevitable, assuming the cases continue in bankruptcy. The only issue is whether the trustee will be appointed now to preserve value, or appointed later after value has been irretrievably lost.

{00200766}

LQD also requests the appointment of an operating trustee on shortened and limited notice and as soon as possible. The record indicates that estate value is being dissipated while the Debtors managers remain in control. Whether the loss of value will accelerate or will be ameliorated, depends upon placing an experienced fiduciary and operator in place now.

I.   BACKGROUND.

The Debtors filed these cases at about 3:15 p.m. on April 9, 2021. They concede they filed because they wanted to block LQD's exercise of its rights under a stock pledge agreement, but they failed to do so. About 30 minutes before the cases commenced, LQD advised the Debtors that KW Restaurant Holdings LLC was no longer the majority member of Crave Brands and Steve Karfaridis was no longer the manager of Crave Brands. This occurred when LQD elected to partially retain the limited liability company interests of KW Restaurants that Karfaridis pledged to secure the $6,650,000 the Debtors, and Karfaridis, owe to LQD. Karfaridis thus lacked the authority to file the Crave Brands case and had dubious, if any, authority to file for Meatheads. LQD exercised its rights under the stock pledge and a related forbearance agreement, in part, because LQD had little confidence that the Debtors' management team know how to profitably operate the Meatheads restaurants.

Not surprisingly. on April 12, 2021, LQD filed a motion to dismiss the cases or, in the alternative, to lift the automatic stay (the "Motion to Dismiss"). Among other things, LQD explained that the cases were filed *ultra vires* because Karfaridis had been removed as the manager of Crave Brands and the cases also had been filed in bad faith on account of the presence of at least 9 of the *Tekena* factors. LQD also explained the stay should be lifted for cause, and because the Debtors did not seek to extend the 30-day window allotted for resolving stay relief motions.

The Court scheduled evidentiary hearings on the Motion to Dismiss. Those occurred on June 2, 3 and 9. The parties then submitted written closing arguments on June 15, 2021. The evidentiary hearings highlighted, at least to LQD, that the Debtors' two operating managers – Steve Karfaridis and Michael Webb – put their own interests ahead of creditors and because of dishonesty and incompetence could not be trusted to preserve the value of LQD's collateral or act as fiduciaries.

Among other things, the evidence showed Karfaridis and Webb stripped the Debtors of desperately needed cash in the first year of operations in 2019 (more than $200,000). Karfaridis charged the Debtors around $130,000 for travel from California to Chicago so that he and his then new girlfriend, and current wife, could enjoy the California lifestyle and weather while he commuted on an irregular basis from San Juan Capistrano to Chicago at the Debtors' expense. The impropriety of these travel expenses is exacerbated by the fact that Karfaridis specifically represented to LQD he would move to Chicago in early 2019 once he acquired the Debtors.

Michael Webb also took around $105,000 of the Debtors' precious cash to pay himself back (as he alleges) for funds he claims he advanced to facilitate Karfaridis' acquisition of 70% of the business and his own acquisition of 3%. What makes Webb's conduct especially pernicious is that he personally dipped into the Debtors' cash account through Zelle payments at a time when the Debtors' cash crisis got so severe that the restaurants avoided closing in early 2020 (pre-pandemic) only by defalcating sales taxes from the State of Illinois and obtaining an additional loan from LQD.

The Debtors near closure prior to the Pandemic contrasted starkly with the original representations Karfaridis and Webb made to LQD regarding the first year of operations. They

represented that in the first year of operation Meatheads would have corporate EBITDA of $2.2 million. Instead, the EBITDA for the ten months of 2019 was actually $66,000, and it was $-570,000 after accounting for additional expenses of $636,276 that Meatheads elected to classify as a one-time item. The discrepancies between actual and projected operations during the first year (pre-pandemic) reflect gross mismanagement and incompetence, if not worse. The testimony from Well Done Hospitality Group also highlighted that the Debtors were not well run and suffered from multiple operational issues.

On June 25, 2021, counsel for the Debtors supplemented his written closing argument to apprise the Court that Karfaridis shuttered the Bloomington, Illinois restaurant ("Bloomington") three weeks earlier – i.e., on June 4, 2021. Debtors' counsel thus believed it was necessary for him to correct his representation that the Debtors had been operating 12 locations, and to advise the Court that this statement was not accurate. Counsel indicated he did not know the Bloomington, Illinois store had been closed on June 15, 2021, and in fact only learned of it late last week.

Similarly, LQD and the Subchapter V Trustee first learned that Karfaridis closed Bloomington about three weeks after the incident occurred. In other words, Karfaridis concealed this important event for three weeks during a period when considerable activity occurred in the cases. The disclosure of this germane information was critical to good faith conduct for several reasons and by no means was the failure to disclose it an inadvertent or benign oversight.

Karfaridis's and Webb's concealment is made more deliberate and indefensible because they each testified extensively at the June 9, 2021, hearing on the Motion to Dismiss, and had the temerity to tout the Debtors' past performance and their view of the positive future prospects for

repaying creditors and refinancing the debt owed to LQD.  They wanted the Court to rely on their representations when they knew the same were based upon false assumptions regarding the Debtors' revenue generating abilities.  The Debtors' exhibit M was used extensively and it contained projections of profitability that Karfaridis and Webb knew were false because of the loss of material revenue from the Bloomington location.  At no point did Karfaridis or Webb intimate in any way, shape, or form that one of the better performing locations (i.e., Bloomington) had been closed the week before due to what they claim are personnel shortages.

The Bloomington location accounts for approximately 13% of the Debtors' EBITDA and a meaningful portion of the Debtors' enterprise value.  *See* Declaration of Will Manderscheid, a copy of which is attached as Exhibit 1.  Thus, closing Bloomington impacts not only the Debtors' ability to refinance the debt to LQD, but the Debtors' cash flow over the next year and the enterprise value of the Debtors.  *Id.*  It also renders the Debtors' Exhibit M false and is proof that LQD's collateral is declining in value post-petition and current management continues to squander value.

Even more indefensible is that Karfaridis and Webb actively deceived LQD and the Subchapter V Trustee (and the Debtors' own counsel) over the past week regarding this material event.  Karfaridis and Webb did this amidst a context in which there is simply no justification for concealing this information.  On Wednesday, June 23, 2021, counsel for LQD and the Debtors contacted Chambers to advise that they had been discussing options for settling the Motion to Dismiss.  LQD and the Debtors thus asked the Court to delay the June 28, 2021, ruling on the Motion to Dismiss.  The goal was to see if the parties could reach an agreement on a plan over the weekend of June 26-27 and then apprise the Court of that on June 28.  LQD did not want the

Court to invest time in rendering an opinion on June 28, 2021, if that opinion was not needed because of a settlement.

At the suggestion of the Subchapter V Trustee, LQD consented to this delay because after several extensive negotiating sessions involving the Debtors, LQD and the Subchapter V Trustee, which started with an in person meeting on June 21, 2021, the parties seemed to be making progress on negotiating key points for the Debtors' reorganization plan. LQD believed the Debtors were negotiating in good faith, but as LQD learned on June 26, 2021, the Debtors' bad faith was rampant.

From LQD's perspective, the critical issues for the Debtors' proposed plan involved the Debtors' ability to (i) achieve the EBIDTDA projections contained in the Plan documents and (ii) refinance the debt owed to LQD by March 31, 2022. Also critical for LQD were the implementation of safeguards for preventing the erosion of value while the Debtors' managers remained in control.

The Debtors' EBITDA projections, their ability to refinance the LQD debt, the preservation of enterprise value and the implementation of operational and reporting safeguards are all affected by the closure of the Bloomington location. *See* Manderscheid Decl. And yet, the Debtors actively concealed this critical information from LQD. The Debtors pretended that it was business as usual when negotiating with LQD when, in fact, their business had been seriously disrupted by the Bloomington closure. *See Id.*

The Debtors may try to deflect or evade responsibility for the Bloomington closure by attributing it to macro-economic issues related to personnel shortages and other matters they claim are outside their control. This is part of their pattern of blaming others for their conduct.

However, there is no credible way to rationalize the concealment of this material fact when there was a duty to disclose it to LQD, the Subchapter V trustee, counsel for the Debtors and, most importantly, the Court. The Debtors' managers own that conduct and it alone constitutes grounds for the immediate appointment of a Trustee.

## II. ARGUMENT.

Upon motion by a party in interest,

> the court shall order the appointment of a trustee—
>
> (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, … or
>
> (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate ….

11 U.S.C. § 1104(a).

In this case, a trustee should be appointed for cause and because the appointment is in the interests of creditors and others.

### A. Cause Exists to Appoint a Chapter 11 Trustee.

"[S]ection 1104 represents a protection that the Court should not lightly disregard or encumber with overly protective attitudes towards debtors-in-possession." *In re Bellevue Place Assoc.*, 171 B.R. 615, 623 (Bankr. N.D. Ill. 1994) (citation omitted). This section mandates the appointment of a trustee for cause, and provides a non-exhaustive list of conduct warranting such appointment. *See In re SunCruz Casinos,* LLC, 298 B.R. 821, 828 (Bankr. S.D. Fla. 2003).

A Chapter 11 Trustee should be appointed here for five primary reasons: (1) Karfaridis and Webb defrauded the Court, LQD and the Subchapter V Trustee by concealing a material fact

{00200766} 7

related to Meatheads' operations in Bloomington, Illinois; (2) Webb and Karfaridis breached their duties to creditors by stripping the pre-petition Debtors of badly needed cash for selfish reasons and pushing the Debtors to the brink of collapse prior to the Pandemic, (3) Webb and Karfaridis have a track record of gross mismanagement and incompetence, (4) Webb and Karfaridis misrepresented key facts to LQD when they induced LQD to make the loan that enabled them to acquire the Debtors, and (5) the interests of creditors are best served if the Meatheads chain is operated by a Trustee/fiduciary who looks out for the interests of creditors first.

      B.    **Karfaridis and Webb Defrauded LQD and the Court by Concealing the Shutdown of the Bloomington Restaurant.**

Under Illinois law, fraud has two basic forms: the affirmative misrepresentation of a material fact and "the intentional omission or concealment of a material fact under circumstances creating an opportunity and duty to speak." *Hassan v. Yusuf*, 408 Ill. App. 3d 327, 345, 944 N.E.2d 895, 911–12 (1st Dist. 2011). (1st Dist. 2010). 997, 569.

"'In order to prove fraud by the intentional concealment of a material fact, it is necessary to show the existence of a special or fiduciary relationship, which would raise a duty to speak.'" *Id.* (quoting *Janowiak*, 402 Ill.App.3d 997, 1006, 342 Ill.Dec. 442, 932 N.E.2d 569, 579 (1st Dist. 2010) (quoting *Thornwood, Inc.*, 344 Ill.App.3d at 25, 278 Ill.Dec. 891, 799 N.E.2d at 763, quoting *First Midwest Bank, N.A. v. Sparks*, 289 Ill.App.3d 252, 260, 224 Ill.Dec. 812, 682 N.E.2d 373, 379 (1997)). "In fact, 'in a confidential or fiduciary relationship, the dominant party's silence alone may constitute fraudulent concealment.'" *Id.* (quoting *Janowiak*, 402 Ill.App.3d at 1006, 342 Ill.Dec. 442, 932 N.E.2d at 579 (quoting *Thornwood, Inc.*, 344 Ill.App.3d at 25, 278 Ill.Dec. 891, 799 N.E.2d at 763, quoting *Melko v. Dionisio*, 219 Ill.App.3d

1048, 1061, 162 Ill.Dec. 623, 580 N.E.2d 586, 593 (1991)).

The law is well-settled that Karfaridis and Webb, as the Debtors' managers, owe LQD a fiduciary duty. This is because "[e]ach debtor-in-possession owes a fiduciary duty to its creditors." *In re Raymond Prof'l Group, Inc.*, 421 B.R. 891, 903 (Bankr. N.D. Ill. 2009) (citing *In re Scott*, 172 F.3d 959, 967 (7th Cir.1999) (citing *In re Schipper*, 933 F.2d 513, 515 (7th Cir.1991)). "'The nature of this duty 'is analogous to the corporate fiduciary duties owed by directors to shareholders under state law and includes the duties of care and loyalty.'" *Id.* (quoting *Bellevue Place*, 171 B.R. at 624 (citing *In re Schipper*, 933 F.2d at 515). "Thus, the debtor-in-possession is proscribed from acting solely in its self-interest to the exclusion of the other interests that it is obligated to protect." *Id.* (quoting Bellevue Place, 171 B.R. at 624)).

Karfaridis and Webb made the conscious decision to conceal the shutdown of the Bloomington store from LQD, the Court, the Subchapter V Trustee, and their own attorney. As fiduciaries they had a duty to disclose this event. That duty was heightened in view of the plan negotiations over the last week, the testimony Karfaridis provided, and the materiality of the event to the Debtors' plan prospects. Karfaridis's and Webb's breach of their duty to disclose a key fact amounts to fraud under Illinois law. That fraud gives rise to grounds to appoint a Chapter 11 Trustee.

    C.    **Webb and Karfaridis Diverted the Debtors' Cash in 2019 for their Own Benefit and to the Detriment of Creditors.**

Webb's and Karfaridis's misappropriation of the Debtors' cash for their own benefit provides additional grounds to appoint a Chapter 11 Trustee. The evidentiary hearing on the Motion to Dismiss established Webb took more than $100,000 from the Debtors' coffers in late 2019 and early 2020, and that approximately $130,000 was used to pay travel expenses in 2019

so that Karfaridis could live in California and travel back and forth to Chicago.

Because Karfaridis and Webb were stripping the Debtors of needed cash in 2019, the Debtors had difficulties paying basic obligations, including payroll. The situation got so dire that the Debtors were forced to divert State of Illinois sales taxes to operating expenses. The consequences of failing to deliver sales taxes to the State of Illinois are severe and can lead to criminal prosecution.[1]

Furthermore, if not for LQD's agreement to advance an additional $150,000 in early 2020, the Debtors may have been unable to satisfy their payroll obligations to their employees. Managements' diversion of funds for their own benefit constitutes either mismanagement, fraud, or dishonesty. It also constitutes a strong reason to appoint a Chapter 11 Trustee.

    D.    **Appointment of a Trustee is Warranted Due To Gross Operational Mismanagement by Karfaridis and Webb.**

The appointment of a Chapter 11 Trustee also is warranted because the evidence shows that Karfaridis and Webb lack the skills needed to manage the Debtors and they lack the ability to accept professional help from third-parties. There was substantial evidence of mismanagement prior to the shutdown of Bloomington and the closure of that profitable location is further evidence of mismanagement.

At the hearing on the Motion to Dismiss, Justin Rolls of Well Done Hospitality testified

---

[1] *See* 35 ILCS § 120/13 ("When the amount due is $300 or more, any person engaged in the business of selling tangible personal property at retail in this State who accepts money that is due to the Department under this Act from a taxpayer for the purpose of acting as the taxpayer's agent to make payment to the Department but fails to remit such payment to the Department when due, is guilty of a Class 3 felony.").

that the Debtors' restaurants were not well run and were, in his view, not up to the hygiene standards one would expect in a fast-casual restaurant. Mr. Rolls also testified that the Debtors did not have up to date standard operating procedures and, perhaps more importantly, they were spending too much on food and other costs. As a result of Well Done's recommendations, the Debtors were able to reduce costs and improve profitability. Perhaps due to hubris, the Debtors' managers were unwilling to accept input from an organization with considerable experience and expertise running food service operations and thus terminated Well Done's involvement. This too portends mismanagement and incompetence.

A Chapter 11 Trustee also is warranted because Meatheads has not filed accurate schedules. Webb acknowledged that the Debtors' statement of financial affairs did not properly disclose insider payments. Additionally, the statement of financial affairs failed to disclose payments to Webb's company, Woodside Advisors, within 2 years of the petition date. This too is mismanagement, if not worse.

### E. Appointment of a Chapter 11 Trustee is in the Best Interests of Creditors and the Estate.

"Section 1104(a)(2) 'creates a flexible standard and allows the appointment of a trustee even when no 'cause' exists.'" *In re Royal Alice Properties, LLC*, 19-12337, 2020 WL 5357795, at *11 (Bankr. E.D. La. Sept. 4, 2020), on reconsideration in part, 19-12337, 2020 WL 5552576 (Bankr. E.D. La. Sept. 16, 2020) (quoting *In re Ionosphere Clubs, Inc.*, 113 B.R. at 426. "The bankruptcy court has broad discretion to appoint a trustee under § 1104(a)(2)." *Id.* (citing *In re Sharon Steel Corp.*, 871 F.2d at 1226; *In re Euro-Am. Lodging Corp.*, 365 B.R. at 428; In re Evans, 48 B.R. 46, 48 (Bankr. W.D. Tex. 1985).

"Indeed, '[u]nder 11 U.S.C. § 1104(a)(2), the Court may utilize its broad equity powers

{00200766}                                11

to engage in a cost-benefit analysis in order to determine whether the appointment of a Trustee would be in the interests of creditors, equity security holders, and other interests of the estate.'" *Id.* (citing *In re Sharon Steel Corp.*, 86 B.R. at 457 (citation omitted). "Consequently, the analysis becomes one of whether the cost of appointing a Trustee is outweighed by the benefits derived by the appointment." *Id.*

As outlined above, LQD lost confidence in the Debtors' managers a long time ago. The lack of confidence prompted LQD to enforce its rights pre-petition. It also prompted LQD to move to dismiss the cases. Based, in part, upon the involvement of the Subchapter V trustee, LQD was willing to consider the Debtors' proposal for operating over the next year under a reorganization plan, subject to certain conditions. At the same time that LQD was negotiating in good faith the conditions that might allow it to support a reorganization plan, the Debtors were, again, defrauding LQD by concealing the fact that a material part of their business had changed and their projections regarding future performance were false. LQD has had enough and strongly seeks the removal of Karfaridis and Webb from any management position.

The benefits of appointing a trustee now also significantly outweigh any costs. LQD believes a trustee will be appointed inevitably based upon management's indefensible track record. On information and belief, Matthew Brash, the current Subchapter V Trustee will be installed as the operating trustee for the Debtors. Mr. Brash has substantial knowledge and understanding of the Debtors' operations and, more importantly, LQD believes Mr. Brash has the trust and confidence of both the Debtors and LQD.

F. **Notice Should Be Shortened and Limited to that Which Has Been Provided.**

LQD served this motion on the entities that receive notice through the ECF system. That

includes the Debtors, the United States Trustee, the Subchapter V Trustee, and several landlords that have filed appearances and requests for notices.  Furthermore, LQD requests that the Court shorten the notice period to that which has been given due to the emergent circumstances that LQD first learned about on June 26, 2021.  The Debtors' managers cannot be trusted to preserve value for creditors and LQD is concerned that every day they remain in possession will lead to a further erosion of value.  Additionally, the Debtors have been cognizant of the circumstances giving rise to the need for a Chapter 11 Trustee – i.e., the erosion of value -- since June 4, 2021, yet they concealed the matter.  The Debtors do not need any additional time to defend conduct that is indefensible, as set forth above.

WHEREFORE, LQD Financial Corp. respectfully requests that the Court enter an Order directing the U.S. Trustee to appoint an operating Trustee in each of the captioned cases.

Dated: June 28, 2021

Respectfully submitted,

**LQD Financial Corp.**

By: /s/ William J. Factor
One of Its Attorneys

William J. Factor (6205675)
Jeffrey K. Paulsen (6300528)
**FACTORLAW**
105 W. Madison Street, Suite 1500
Chicago, IL 60602
Tel:    (847) 239-7248
Fax:    (847) 574-8233
Email: wfactor@wfactorlaw.com
       jpaulsen@wfactorlaw.com